ARTHUR WILLIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent B. LORENE WILLIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Willie v. Commissioner
Docket Nos. 7135-70, 7136-70.
United States Tax Court
T.C. Memo 1973-40; 1973 Tax Ct. Memo LEXIS 246; 32 T.C.M. (CCH) 184; T.C.M. (RIA) 73040; February 15, 1973, Filed Arthur Willie, pro see. *247 Allan D. Hill, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION The Commissioner determined a deficiency in Arthur Willie's income tax for 1966 in the amount of $2,377, and a deficiency in B. Lorene Willie's income tax for that year in the amount of $2,593. The principal issue involves a 2 deduction for a claimed theft loss in respect of certain air tools stolen in 1966; resolution of this issue turns upon the determination of the adjusted basis of such tools. A second issue also turns upon that adjusted basis, since the Commissioner treated it as zero and included petitioners' insurance recovery in their income. FINDINGS OF FACT The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. Arthur Willie, the petitioner in Docket No. 7135-70, and B. Lorene Willie, the petitioner in Docket No. 7136-70, are husband and wife. They each filed an individual Federal income tax return for 1966 with the district director of internal revenue at Los Angeles. At the time the petitions herein were filed they resided in Seal Beach, California. In 1959 the petitioners purchased *248 a "repair" business located in Compton, California, for approximately $4,000. They operated this business under the assumed name of Metalock Western. The business involved the repair of broken machinery and castings for large industrial concerns by a cold repair method called "Metalock". Under this method the broken pieces of castings were held together by the insertion of a high 3 strength alloy. The repair work was performed with high speed air tools, such as drills, grinders, hammers, etc. These tools were of two basic types or sizes, namely, the smaller ones, approximately the size of an average home electric drill, which were used with normal size castings, and larger ones, which could be several times as large and which were used for big, thick castings. Although petitioners obtained certain equipment in connection with the purchase of the business in 1959, they did not get any usable high speed air tools as part of that acquisition. In order to obtain the required tools the petitioners found it necessary to borrow funds. On August 18, 1959 they borrowed $4,480 from the California Bank, and on November 5, 1959 they borrowed $1,400 from Mr. and Mrs. Fred Sage, Mrs. *249 Willie's parents. In addition, on July 25, 1962 Mr. Willie borrowed $5,000 from the United California Bank. The entire proceeds of these three loans were used to buy the needed high speed air tools. Approximately $3,000 of additional funds were spent to purchase more tools after July 19, 1963, the date on which the United California Bank note was fully paid. 4 All of the tools in question were new when purchased and were used in the petitioners' business. The maximum number of employees at any one time was four. Petitioners kept six complete sets of tools - two for the shop and one to travel with each man to the job. The larger tools were generally kept in the shop and were taken out only when the job required. New tools of this type were quite expensive; therefore, as some of the internal parts of each tool would wear out, the petitioners would obtain replacement parts and repair the tool themselves. While they did not depreciate the tools during the time they were in use (or immediately "expense" them), the petitioners did take deductions for the cost of these replacement parts. Such tools, if properly maintained, had a useful life of between five and ten years. *250 Petitioners continued to operate Metalock Western until October 1, 1966, when they sold it for $100,000. Prior to this sale, some time between March 5 and March 7, 1966, the business premises of Metalock Western were broken into and all of petitioners' tools, except three which were inoperable, were stolen. This theft was reported to the police. The petitioners prepared a list of all of the stolen tools, including what type of tool each was and its serial number, for use by the police. 5 Petitioners had an insurance policy in the amount of $2,000 covering theft losses (the maximum amount of insurance obtainable by them), and they received insurance reimbursement in 1966 of $2,000. On their 1966 income tax returns petitioners claimed a total deduction for "losses of business property * * * Burglary-Case #C-76685" in the amount of $11,818, each claiming a loss of $5,909 on a separate return. The Commissioner determined a deficiency against petitioners by disallowing the claimed loss and treating the insurance reimbursement as taxable income. OPINION RAUM, Judge: Section 165(a), I.R.C. 1954, provides a deduction for "any loss sustained during the taxable year and not *251 compensated for by insurance * * * ". Section 165(b) states that the amount of this deduction " * * * shall be the adjusted basis provided in section 1011 * * * ". Petitioners have claimed a burglary loss in the amount of $11,818.[1] While they did produce a list of all of the tools which they claimed were stolen, indicating what type of tool each was and its serial number, they have not provided us with any invoices or receipts substantiating when they purchased these tools or the 6 amounts they paid for them. Moreover, in calculating the amount of their theft loss deduction petitioners did not adjust their basis in the tools for allowable depreciation. See section 1016(a) (2), I.R.C. 1954. Cf. Hardwick Realty Co. v. Commissioner, 29 F. 2d 498, 499-500 (C.A. 2), certiorari dismissed on motion 279 U.S. 876; Herder v. Helvering, 106 F. 2d 153, 162 (C.A. D.C.), certiorari denied 308 U.S. 617, rehearing denied 308 U.S. 639. The Commissioner, in supporting his disallowance of the deduction, argues that the petitioners have already "expensed" or depreciated the cost of these tools, or alternatively that they have *252 failed to establish any cost basis in the tools. After a careful examination of the entire record we are satisfied that these tools were not "expensed" or depreciated and we have made a finding of fact to this effect. However, the fact that petitioners did not depreciate the air tools on their returns for prior years is a matter of no consequence, since adjustments must be made for all allowable depreciation. Moreover, the evidence shows that petitioners took a $1,123.40 deduction on their 1964 return for "Burglary Loss (Tools)", and we are far from satisfied that the tools involved in the 1964 theft were not part of the tools purchased by petitioners for which they now claim a theft loss for 1966. 7 The record does not enable us to make any accurate determination of the adjusted basis of the tools stolen in 1966. However, using our best judgment, based upon the entire record (cf. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2)), we hereby find as a fact that the adjusted basis of all the stolen air tools at that time was $4,000. *253 Of course, this amount must be offset by petitioners' insurance recovery of $2,000 in determining the amount of their loss deduction. Accordingly, Decisions will be entered under Rule 50. Footnotes
1. Apparently this amount was calculated by subtracting the insurance recovery of $2,000 from an asserted loss of $13,818. ↩